(Cincinnati Superior Court.)
Special Term, 1901.

JAS. W. SIBLEY et al. v. SIMON ROSS et al.

---

*Violation on Lease—Rent—Damages—*

1. Where the lessors of a building under contract to repair its walls negligently or perversely refuse to perform the obligations of the contract, they not only can recover no rent but would be liable to the lessees for damages sustained by breach of the contract.

*Rent of Insecure Building—Lessee Liable, When—*

2. Under a lease, of a building to be used for operating heavy machinery, wherein it is provided that lessors shall keep the walls (which, when the lease was made and to the knowledge of both parties, were bolted together), in repair and it appears that, upon being notified and finding that the walls were insecure, lessees were ready and willing to repair them, even to the extent of rebuilding, but were prevented from carrying out plans, prepared by the architect, from so doing, by the lessees, in the first instance, claiming that the plans were insufficient, and then prevented from making repairs by the city, such lessees are liable for the stipulated rent during the time they retained possession of the building, notwithstanding the fact that it was insecure and untenantable.

The judgment in the court was affirmed by general term, January term, and by the supreme court *without report,* 52 Ohio St., 668, 33 W. L. B., 168.

---

This action was brought by James W. Sibley and wife against Simon Ross, Jr., and others for three months' rent at the rate of $250 per month, of premises located upon Sycamore street, in the city of Cincinnati, occupied under a lease between the parties, by which Ross and partners agreed to pay such rental to Sibley and wife during their tenancy. The answer of the defendants admits the execution of the lease, the agreement to pay rent, and sets up a covenant contained in the lease, that Sibley and wife should keep all roofs of the premises in repair, and also, if the walls of the building should be insecure, to place them in good repair.

The answer also avers that the plaintiffs knew at the time of the execution of the

lease, the character and kind of business that the defendants proposed to carry on upon said premises, and that the covenant to keep in repair all walls of the buildings was inserted in the lease with full knowledge upon the part of Sibley and wife, of the purpose for which the buildings were to be used by the lessees. The answer also·charges that Sibley and wife have not kept this agreement, and that having failed to do so, the lessees are not liable for any of the rent.

By way of cross-petition Ross and partners, the lessees, say that the lease was entered into between them and Sibley and wife, with the understanding that the lessees were to engage and use said premises in the manufacture of certain kinds of machinery, much of which was bulky and of great weight. That the successful transaction of their business required that the buildings should be not only kept in repair, but that the walls should be secure, and kept so, and capable of sustaining the weight incident to their manufacturing business; that Sibley and wife knew the kind of business the defendants were to engage in. That Sibley and wife covenanted not only to keep the roofs of the buildings in repair, but to keep the walls also in repair, and that if they became insecure, to place them in good repair.

The defendants charge that the walls of the buildings became out of repair and so insecure that for months they were not able to occupy all of the premises by reason of their insecurity and unsafe condition, and were practically compelled to abandon three upper floors of one of the buildings, and that although Sibley and wife were frequently called upon to repair, and notified to make secure and safe the walls of the buildings, they altogether neglected and refused to do so. For the injury to their business the defendants claim damages to the amount of $5,000. To the cross-petition of the defendants, the plaintiffs below filed a general denial.

NOYES, J.

Gentlemen of the jury: The obligations of the parties to this case arises upon a contract which is contained in the lease which has been offered in evidence and read in your hearing.

Ross, Moyer & Co., agreed to rent for a term of years these premises at a specified rental of $250 a month, which includes the three buildings which were covered by the lease, together with the lands upon which they stood.

On the other hand, the plaintiff in this case simply agrees, upon the suggestion of the other party, to enter in the lease an obligation on his part to keep in repair the walls of the premises of No. 135. You will stop there to consider what was the condition of these prem-

ises at the time when they were leased by Ross, Moyer & Co., from Sibley, as to whether or not both parties had reasonable opportunity to observe and to know the condition of that building.

You have heard the testimony relating to their being bound together by iron rods and bolts to a certain extent; you have heard the testimony with regard to their being out of plumb, 13 inches on one side and 11 inches on the other. All of that is before you and you will give to it such effect and force as may seem to you reasonable and proper.

Now, then, it did appear at one time to Ross, Moyer & Co., that these walls were insecure. They called upon the lessor to come and view them and to settle for himself whether or not they were secure. The result of the deliberation and controversy between the parties was that an attempt to repair was made. Now, you will recall all the evidence; first, as to the attempt to repair one wall, both walls, all of those attempts, and what was said with regard to that by Ross, Moyer & Co., to Sibley, whether or not they made any objections to such repair, whether or not they regarded it as sufficient under the stipulations of the lease as a sufficient repair or not. You will then consider what subsequently took place, the action of the city authorities, or the official inspector as to whether or not Sibley was permitted to go on and repair either one or both of those walls upon the old foundation as it stood. You will consider whether Sibley was ready to do and offered to do what was stipulated in the lease he should do. Now, if he was called upon by Ross, Moyer & Co., to make repairs, and he either negligently or perversely refused to do what his contract bound him to do, then not only can he recover no rent, but on the other side, Ross, Moyer & Co., would be entitled to whatever damages they have sustained by reason of breach of contract on the part of Sibley; but if you find that Sibley did everything that it was possible for him to do; that in response to the request he immediately employed an architect or a builder or a mason, or whatever was necessary, to do the work, and that finally, if you should find that that was objected to by Ross, Moyer & Co. as being sufficient, that it was not his fault that it was not done in that way; if you should find that any objection was made by Ross, Moyer & Co., if you should find that the city authorities prevented Sibley from doing that thing, then you will inquire whether or not he offered to do the next best thing, which was to rebuild this property, No. 135, from the ground up. If he did all that and it was the only thing he could legally

and properly do, then I charge you he was not in default for not repairing these premises. That is to say, if, in the first place, it was on the objection of Ross, Moyer & Co. themselves that the repairs were not made in one form, and then upon the objection and authority of the city that it was not done, but that he was ready and was willing, specifying the time within which it should be done, to rebuild another property, then I charge you the plaintiff was not in fault and is entitled to recover his rent. For you will remember this was during the months of June, July and August, during all of which time Ross, Moyer & Co. remained in possession of the premises, not having relinquished them until a subsequent date.

Now, hiving remained in the premises during the three months for which suit is brought, if you find that Sibley did everything which his contract provided he should do, except wherein prevented by operation of the city authorities and by objection of Ross, Moyer & Co., then he is in no fault and is entitled to recover his rent. I have already charged you that if you find he was in default, did not do his duty, did not comply with his contract, was not ready to do it and willing to do it and able to do it, then not only can he recover no rent, but the defendant is entitled to recover damages on his answer and cross-petition, for whatever damages he sustained.

This is not a case of lightning striking the buildings and knocking them all to pieces, or an earthquake dashing them down, or a fire burning them down; it is a case of ordinary decay, long continued, which must have been observed by the parties.

Mr. Baker: "I asked your horor to charge that if without fault of either of these parties the building became untenantable, my client is not to be chargeable with the expense of the damage."

Which charge the court refused to give. To which refusal the defendant by his counsel, then and there excepted.

*Ramsey, Maxwell* and *Ramsey,* and *Lawrence Maxwell, Jr.,* for Plaintiff.

*Chas. W. Baker,* for Defendant.

In the Supreme Court, *Chas. W. Baker,* for Defendant: *Huston* v. *Railroad Co.,* 21 Ohio St., 235; *Wolf* v. *Arnot,* 109 Pa. St,. 473; *Kinkaid* v. *Britton,* 5 Snead, Tenn., 130; *Williams* v. *Healey,* 3 Denio, 363; *Burrows* v. *Clarey,* 53 Ill., 30; *Williams* v. *Healey,* 3 Denio, 363; sec. 4113, Rev. Stat.

*Ramsey, Maxwell* and *Ramsey,* and *Lawrence Maxwell, Jr.* for Plaintiff, cited: *Hart* v. *Windsor,* 12 M. & W., 68; *Dutton* v. *Gerrish,* 9 Cush., 89; *Sutton* v. *Temple,* 12 M. & W., 52; *Krueger* v. *Fanaudt,* 29 Minn., 385; *Suydam* v. *Jackson,* 54 N. Y., 450; *Hilliard* v.

*Gas Coal Co.,* 41 Ohio St., 662, 669; *Johnson* v. *Oppenheim,* 55 N. Y., 280.