# WILLIAM GLYNN, Plaintiff, *v.* THE CITY OF OSWEGO, Defendant.

## (County Court, Oswego County, April, 1911.)

**Municipal corporations — Fire department: Suspension: Compensation — During suspension.**

Under a charter provision (Laws of 1895, ch. 394, § 187) of the city of Oswego, permitting the fire department to make such rules and regulations as it may deem best for its good government, a rule may be adopted authorizing the suspension of a fireman for insubordination and neglect of duty.

The plaintiff, a regularly appointed fireman in the city of Oswego, was relieved from duty and suspended without pay for alleged violations of the rules of the department until the next meeting, five days later, of the department when action upon the charges against him was deferred until a further meeting, two months later, and a motion for his reinstatement was then lost by a tie vote. In an action for wages or salary from the date of his suspension or the day of the first meeting of the fire department after the suspension, held, that under the rule adopted pursuant to the authority of the charter the suspension of plaintiff who was not a city officer was legal and that he had not been relieved from the operation thereof; that if his suspension was illegal or improper he could by mandamus have compelled his reinstatement to duty and the pay-roll pending final action on the charges against him, and that without such reinstatement an action for wages or salary would not lie.

Where, notwithstanding plaintiff's claim that his suspension only lasted until the question was voted on by the department and that then by operation of the charter provisions and the rules of the department he again became a member thereof and entitled to salary, he acquiesced in treating his suspension without pay as continuing except that about a month thereafter he called upon the clerk of the department in regard to his salary and asked him if there were any orders left for him and was told there was not and he asked the same question on another occasion and neither made a demand for salary nor claimed that he had been unlawfully suspended, there is not a sufficient basis for an action for salary or wages as it is essential to a recovery therein to show timely tender of performance.

ACTION to recover salary as fireman in the fire department of the city of Oswego.

A jury having been waived, the above action was moved for trial before the Oswego county judge, without a jury, at his chambers at Oswego, N. Y., on the 6th day of March, 1911, and the case was finally submitted April 6, 1911.

Thomas L. McKay, for plaintiff.

John R. Pidgeon, for defendant.

ROWE, J. The plaintiff, having passed the examination required by the civil service board of the city of Oswego for appointment as fireman, was, on December 1, 1908, regularly appointed to a position as fireman in the Oswego fire department at the monthly salary of $65; and he continued as a fireman in the service of said department until June 25, 1909, when he was relieved from duty and suspended as such fireman for alleged violations of the rules of the department. The legality of the suspension without pay is questioned by the plaintiff, who sues for wages or salary at $65 a month from the date of such suspension, or the day of the first meeting of the department after said suspension, to November 25, 1910, when a claim for such wages or salary amounting to $1,105 was made against the city; and soon thereafter this action was begun.

The charter of the city of Oswego provides: " No policeman or fireman shall be appointed or discharged at any meeting of the department, unless all the commissioners are present or shall have been served at least twenty-four hours before said meeting with a written or printed notice of said meeting, signed by the president or clerk, stating that the question of the appointment or discharge of a policeman or fireman will be considered at said meeting; and no appointment or discharge of any fireman or policeman shall be made except by the affirmative vote of a majority of all the commissioners." Laws of 1895, vol. 2, pt. 1, chap. 394, § 182, p. 681.

Section 187 of said charter reads as follows: " The de-
38

partment shall make such rules and regulations as to it may seem best, for the good government of itself and of the fire and police departments."

Under the authority granted by the last named section of the charter the department adopted the following rule:

" Rule 2. The Chief Engineer shall appoint substitutes to fill vacancies in the department, subject to the approval of the Board of Fire Commissioners. It shall be his duty to report to the Board of Fire Commissioners any insubordination, disorderly conduct, delinquencies or neglect of duty that shall be discovered on the part of officers, members and employees and have the power to suspend any officer or member of the Fire Department for insubordination, disorderly conduct, or neglect of duty, and promptly report the same to the board; said suspension to continue in effect until acted upon by the Board of Fire Commissioners."

Acting under such authority, the chief, for alleged insubordination and neglect of duty, suspended the plaintiff as above stated by notice in writing until the next meeting of the department. The next meeting of the department was held on June 30, 1909. At that meeting the charges against the plaintiff were taken up and the claims of the plaintiff and the chief were heard, but action was deferred until further meeting.

At a meeting of the department which followed, on August 31, 1909, the following appears in its records: " Commissioner McGowan: Moved that Fireman Glynn, suspended, be re-instated same to take effect September 1st. Ayes: Commissioners McGowan and Gleason. Noes: Commissioners McCarthy and Pres. Frost. Motion lost."

No further specific action was ever taken by the department in relation to the suspension of the plaintiff.

The plaintiff claims that he has never been dismissed by the department and is still in its employ and is entitled to the salary or wages attached to such position, and that the only way in which the department could legally dispense with his services was by a majority vote, as provided by the charter; and, further, that the chief only had authority to suspend him until action upon the charges was taken by the

defendant, which action he claims was taken August 31, 1909, and that the department itself had no authority to suspend him indefinitely, although it had authority to discharge him by an affirmative vote; and he cites in support of his contention: Gregory v. City of New York, 113 N. Y. 416; Emmitt v. City of New York, 128 id. 117; Alker v. Mayor, 27 Hun, 413; McCoy v. City of New York, 46 id. 268.

The case at bar does not seem to come within the scope of these authorities, as the charter of Oswego, by section 4, expressly enumerates what employees are officers of said city; and while it includes a harbor master, a chief of police, the policemen, a police matron, a janitor, a chief engineer of the fire department, a fire marshal and others, it does not include firemen; and, further, section 187 of the charter above mentioned expressly permits the fire department to make such rules and regulations as to it may seem best for the good government of the fire department. The rule adopted by the department authorizing the suspension of a member for misconduct seems to be salutary and perhaps the only method the department could adopt to enforce discipline in the force.

It follows that the suspension of the plaintiff was legal and authorized by law, and that he has not been relieved from the operation of such suspension. The failure of the charter plan to work satisfactorily is probably due to the fact that the department is a bipartisan board, composed of four members. If such suspension only lasted until the department voted upon the question of reinstatement of the suspended member upon the force, as claimed by the plaintiff, and the motion was lost by a tie vote, a hard blow to the authority of the chief engineer of the department and the necessary discipline of the department would be dealt. It is not good policy to indifferently suspend any employee, but it would be worse policy to attempt to run an important municipal department where absolute discipline is essential and take away from the executive officer of that department all effective power to maintain order where, by reason of a deadlock in such department, the department fails to take affirmative action, one way or another, upon his report of insubordination existing in the force.

Notwithstanding plaintiff's present claim that the suspension in his case only lasted until the question was voted upon by the department, and that then by operation of the charter provisions and the rules of the department he again became a member of the fire department, entitled to his salary, he failed to report to the chief for duty, or to the foreman at the engine house where he had been employed, or to the department itself at any of its regular meetings, or to make any demand upon any one connected with the department to be put back to work; but he seems to have acquiesced in treating his suspension without pay as continuing, with one exception only, that he called upon the clerk of the department, a month or so after his suspension, in regard to his salary, and asked the clerk if there were any orders left there for him and was told he had received no orders; and he added that it was at least a month after his suspension, and that he asked the clerk the same question on another occasion. He did not make any demand on the department or on the clerk on these occasions for salary, nor claim he was unlawfully suspended. This is the only evidence in the case that he claimed to have or expected to make any claim for salary, until he filed his claim against the city, about December 5, 1910, except that he swore that he reported for duty at the engine house daily, and held himself in readiness to perform the duties of the position, and did perform certain duties at a certain large fire which occurred after his suspension. As to this he is flatly contradicted by the foreman at the engine house, an old employee of the department, and by the chief engineer of the department. The burden of proof is upon the plaintiff on this question; and, as a question of fact, it must be decided against him upon all the evidence in the case.

In the Gregory case the court held that the frequent attendance of the plaintiff at the office of the board and his continuous offers to discharge the duties of the position to which he had been appointed were sufficient tenders of performance on his part, while in the case at bar the evidence shows that the plaintiff made no tenders of performance after he claims he should have been restored to duty upon the force. Had he at once offered his services to the chief and challenged

the right of the department to indefinitely suspend him, action by the department would probably have followed, and an early adjustment of the matter might have been made and this suit avoided.

In an action by an employee for salary or wages for services or work not actually performed or rendered, timely tender of performance must be shown as an essential element to the right of recovery. Howard v. Daly, 61 N. Y. 362; Griffin v. Brooklyn Ball Club, 68 App. Div. 566; affd., 174 N. Y. 535; Williams v. Healy, 3 Den. 363; Babock v. Stanley, 11 Johns. 178; Nelson v. Plimpton Fireproof El. Co., 55 N. Y. 480; Steinson v. Board of Education of N. Y., 49 App. Div. 143.

In the cases cited by the plaintiff where recovery was allowed, the question of offering services was not raised, or the cases show that such offer had been made on the part of the plaintiffs.

The plaintiff still stands suspended without pay, unless it is held that the acts of the department in hiring another man to do the work which was done by the plaintiff worked a discharge of the plaintiff, in which he acquiesced and thus abandoned his position in the service prior to making formal claim herein and bringing this suit.

If plaintiff is still a member of the department but under illegal or improper suspension, before a claim for wages will accrue, it seems he should, by mandamus, compel his reinstatement to duty and to the pay-roll of the department pending final action upon the charges against him.

Without such reinstatement to duty an action for wages cannot be maintained. People ex rel. Corkhill v. McAdoo, 98 App. Div. 312; People ex rel. Hoefle v. Cahill, 188 N. Y. 489; Sutliffe v. City of New York, 132 App. Div. 831, 835.

Judgment is ordered herein in favor of the defendant and against the plaintiff, dismissing the complaint upon the merits, with costs.

Judgment for defendant.